ROBERT D. BEUCLER 005224
20 EAST THOMAS ROAD, SUITE 2600
PHOENIX, AZ 85012
PHONE 602-258-8900
FAX    602-230-2027
EMAIL  amandan@phillipslaw.ws

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br>**DAVID BARRY MANNING**<br>**KRISTYNNA RENEE PERU** | **Case No. 2:10-bk-12228-SSC**<br><br>**CHAPTER 13 PLAN AND APPLICATION FOR**<br>**PAYMENT OF ADMINISTRATIVE EXPENSES** |

Debtor(s).

⊠ Original
☐ Amended
☐ Modified

SSN  xxx-xx-3833       SSN  xxx-xx-7204
**964 E. GILA LANE**
**Chandler, AZ 85225**

☐ Plan payments include post-petition mortgage payments

This Plan may affect creditor rights. **If you object to the treatment of your claim as proposed in this Plan, you must file a written objection by the deadline set forth in a Notice of Date to File Objections to Plan served on parties in interest.** If this is a joint case, then "Debtor" means both Debtors. This plan does not allow claims or affect the timeliness of any claim. To receive payment on your claim, you must file a proof of claim with the Bankruptcy Court, even if this Plan provides for your debt. The applicable deadlines to file a proof of claim were specified in the Notice of Commencement of Case. Except as provided in § 1323(c), a creditor who disagrees with the proposed treatment of its debt in this Plan must timely file an objection to the Plan.

If this is an Amended or Modified Plan, the reasons for filing this Amended or Modified Plan are:

(A)    **Plan Payments and Property to be Submitted to the Plan.**

   (1)  Plan payments start on  **MAY 23, 2010** . The Debtor shall pay the Trustee as follows:

   $ **475.00**  each month for month  **1**  through month  **60** . (**MAY 2010 through APRIL 2015**)

   The proposed plan duration is  **60**  months. The applicable commitment period is  **60**  months. Section 1325(b)(4).

   (2)  In addition to the plan payments, Debtor will submit the following property to the Trustee: **NONE**

(B)    **Trustee's Percentage Fee.** Pursuant to 28 U.S.C. § 586(e), the Trustee may collect the percentage fee from all payments and property received, not to exceed 10%.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

(C) **Treatment of Administrative Expenses, Post-Petition Mortgage Payments and Claims**. Except adequate protection payments under (C)(1), post-petition mortgage payments under (C)(4), or as otherwise ordered by the Court, the Trustee will make disbursements to creditors after the Court confirms this Plan. Unless otherwise provided in Section (J), disbursements by the Trustee shall be pro rata by class (except adequate protection payments) and made in the following order:

(1) *Adequate protection payments*. Section 1326(a)(1)(C) requires adequate protection payments to be made to creditors secured by personal property. Pursuant to Local Bankruptcy Rule 2084-6, the Trustee is authorized to make preconfirmation adequate protection payments to the certain secured creditors without a Court order, provided the claim is properly listed on Schedule D, the creditor files a secured proof of claim that includes documentation evidencing a perfected security agreement, and the debtor or creditor sends a letter to the Trustee requesting payment of preconfirmation adequate protection payments. The Trustee will apply adequate protection payments to the creditor's secured claim. After confirmation, unless the Court orders otherwise, adequate protection payments will continue in the same amount until claims to be paid before these claimants are paid in full, unless the confirmed plan or a court order specifies a different amount. **If a secured creditor disagrees with the amount of the proposed adequate protection payments or the plan fails to provide for such payments, the creditor may file an objection to confirmation of this plan, file a motion pursuant to §§ 362, 363, or do both.**

| Creditor | Property Description | Monthly Amount |
|---|---|---|
| -NONE- | | |

☐ See Section (J), Varying Provisions.

(2) *Administrative expenses*. Section 507(a)(2).

  (a) Attorney fees. Debtor's attorney received $ **2,590.00** before filing. The balance of $ **1,410.00** or an amount approved by the Court upon application shall be paid by the Trustee. See Section (F) for any fee application.

  (b) Other Administrative Expenses. [Describe]

☐ See Section (J), Varying Provisions.

(3) *Leases and Unexpired Executory Contracts*. Pursuant to § 1322(b), the Debtor assumes or rejects the following lease or unexpired executory contract. For a lease or executory contract with an arrearage to cure, the arrearage will be cured in the plan payments with regular monthly payments to be paid direct by the Debtor. The arrearage amount to be adjusted to the amount in the creditor's allowed proof of claim.

  (a) Assumed:

| Creditor & Property Description | Estimated Arrearage Amount | Arrearage Through Date |
|---|---|---|
| **T-MOBILE** | 0.00 | n/a |
| **CELLULAR TELEPHONE SERVICE (ASSUME)** | | |

  (b) Rejected:

| Creditor | Property Description |
|---|---|
| -NONE- | |

☐ See Section (J), Varying Provisions.

2

(4) **_Claims Secured Solely by Security Interest in Real Property._** A creditor identified in this paragraph may mail the Debtor all correspondence, notices, statements, payment coupons, escrow notices, and default notices concerning any change to the monthly payment or interest rate without such being a violation of the automatic stay. Unless stated below, Debtor is to pay post-petition payments direct to the creditor and prepetition arrearages shall be cured through the Trustee. No interest will be paid on the prepetition arrearage or debt unless otherwise stated. The arrearage amount is to be adjusted to the amount in the creditor's allowed proof of claim. Except as provided in Local Bankruptcy Rule 2084-23, if a creditor gets unconditional stay relief the actual cure amount to be paid shall be adjusted by the Trustee pursuant to the creditor's **_allowed_** proof of claim. If the Debtor is surrendering an interest in real property, such provision is in paragraph (E). The Debtor is retaining real property and provides for each such debt as follows:

| Creditor/Servicing Agent & Property Description | Collateral Value & Valuation Method | Post-Petition Mortgage Payments | Estimated Arrearage | Arrearage Through Date |
|---|---|---|---|---|
| **CITIMORTGAGE, INC** **SINGLE FAMILY RESIDENCE: 964 E. GILA LANE, CHANDLER AZ** | 116,000.00 **Certified Appraisal by: DSH Appraisal Services** | 1,138.80 ☒ Debtor will pay direct to creditor; or ☐ Included in Plan payment. Trustee will pay creditor. | 303.86 | 4/23/2010 |
| **STONEGATE CROSSING UNIT THREE, INC** **SINGLE FAMILY RESIDENCE: 964 E. GILA LANE, CHANDLER AZ** | 116,000.00 Appraisal | 50.00 ☒ Debtor will pay direct to creditor; or ☐ Included in Plan payment. Trustee will pay creditor. | 975.50 | 04/23/2010 |

☒ See Section (J), Varying Provisions.

(5) **_Claims Secured by Personal Property or a Combination of Real and Personal Property._** Pursuant to § 1325(a), secured creditors listed below shall be paid the amount shown as the Amount to be Paid On Secured Claim, with such amount included in the Plan payments. However, if the creditor's proof of claim amount is less than the Amount to be Paid On Secured Claim, then only the proof of claim amount will be paid. Any adequate protection payments are as provided in Section (C)(1) above. If a creditor fails to file a secured claim or files a wholly unsecured claim, the debtor may delete the proposed payment of a secured claim in the order confirming plan.

| Creditor & Property Description | Debt Amount | Value of Collateral and Valuation Method | Amount to be Paid On Secured Claim | Interest Rate |
|---|---|---|---|---|
| -NONE- | | | | |

☒ See Section (J), Varying Provisions.

(6) **_Priority, Unsecured Claims._** All allowed claims entitled to priority treatment under § 507 shall be paid in full pro rata.

    (a) Unsecured Domestic Support Obligations. The Debtor shall remain current on such obligations that come due after filing the petition. Unpaid obligations before the petition date to be cured in the plan payments.

| Creditor | Estimated Arrearage Amount | Arrearage Through Date |
|---|---|---|
| -NONE- | | |

    (b) Other unsecured priority claims.

| Creditor | Type of Priority Debt | Estimated Amount |
|---|---|---|
| **ARIZONA DEPARTMENT OF REVENUE** | **Taxes and certain other debts** | 313.00 |
| **INTERNAL REVENUE SERVICE** | **Taxes and certain other debts** | 5,665.00 |

☐ See Section (J), Varying Provisions.

(7) **_Codebtor Claims._** The following codebtor claim is to be paid per the allowed claim, pro rata before other unsecured, nonpriority claims.

| Creditor | Codebtor Name | Estimated Debt Amount |
|---|---|---|
| -NONE- | | |

☐ See Section (J), Varying Provisions.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com      Best Case Bankruptcy

(8) ***Unsecured Nonpriority Claims.*** Allowed unsecured, nonpriority claims shall be paid pro rata the balance of payments under the Plan.

☐ See Section (J), Varying Provisions.

(D) **Lien Retention**. Secured creditors shall retain their liens until payment of the underlying debt determined under nonbankruptcy law or upon discharge, whichever occurs first. Federal tax liens shall continue to attach to property excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) until the Internal Revenue Service is required to release the liens in accordance with non bankruptcy law.

☐ See Section (J), Varying Provisions.

(E) **Surrendered Property**. Debtor surrenders the following property to the secured creditor. Upon confirmation of this Plan or except as otherwise ordered by the Court, bankruptcy stays are lifted as to the collateral to be surrendered. Any secured claim filed by such creditor shall receive **no** distribution until the creditor files an allowed unsecured claim or an amended proof of claim that reflects any deficiency balance remaining on the claim. ***Should the creditor fail to file an amended unsecured claim consistent with this provision, the Trustee need not make any distributions to that creditor.***

| Creditor | Property Being Surrendered |
|---|---|
| -NONE- | |

(F) **Attorney Application for Payment of Attorney Fees**. Counsel for the Debtor has received a prepetition retainer of $ **2,590.00** , to be applied against fees and costs incurred. Fees and costs exceeding the retainer shall be paid from funds held by the Chapter 13 Trustee as an administrative expense. Counsel will be paid as selected in paragraph (1) or (2) below:

(1) **Flat Fee**. Counsel for the Debtor has agreed to a total sum of $ **4,000.00** to represent the Debtor. Counsel has agreed to perform the following services through confirmation of the plan:

☐ All of the below, except Additional Services.
☒ Review of financial documents and information.
☒ Consultation, planning, and advice, including office visits and telephone communications.
☒ Preparation of Petition, Schedules, Statement of Financial Affairs, Master Mailing List.
☒ Preparation and filing of Chapter 13 Plan, Plan Analysis, and any necessary amendments.
☒ Attendance at the § 341 meeting of creditors.
☒ Resolution of creditor objections and Trustee recommendations, and attendance at hearings.
☒ Reviewing and analyzing creditor claims for potential objections, and attendance at hearings.
☒ Responding to motions to dismiss, and attendance at hearings.
☐ Responding to motions for relief from the automatic stay, and attendance at hearings.
☒ Drafting and mailing of any necessary correspondence.
☒ Preparation of proposed order confirming the plan.
☐ Representation in any adversary proceedings.
☒ Representation regarding the prefiling credit briefing and post-filing education course.

**4**

**Additional Services**. Counsel for the Debtor has agreed to charge a flat fee for the following additional services provided to the Debtor after confirmation of the plan:

☒ Preparation and filing of Modified Plan $ **750.00** .
☒ Preparation and filing of motion for moratorium $ **750.00** .
☒ Responding to motion to dismiss, and attendance at hearings $ **750.00** .
☐ Defending motion for relief from the automatic stay or adversary proceeding $___.
☒ Preparation and filing of any motion to sell property $ **750.00** .
☒ Other
   **Responding to motions for relief from the automatic stay, and attendance at hearings; Preparing and filing Motions to Incur Debt, and attendance at hearings... Fee $750.00.**

   **Prosecuting avoidance of voluntary lien secured by real property... Fee $1,000.00.**

All other additional services will be billed at the rate of $ **265.00** per hour for attorney time and $ **100.00** per hour for paralegal time. Counsel will file and notice a separate fee application detailing the additional fees and costs requested. Counsel will include *all* time expended in the case in the separate fee application.

☐ See Section (J), Varying Provisions.

(2) **Hourly Fees**. For hourly fees to be paid as an administrative expense, counsel must file and notice a separate fee application detailing the additional fees and costs requested. The application must include all time expended in the case.

Counsel has agreed to represent the Debtor for all services related to the Chapter 13 bankruptcy to be billed at the rate of $__ per hour for attorney time and $__ per hour for paralegal time.

☐ See Section (J), Varying Provisions.

(G) **Vesting**. Property of the estate shall vest in the Debtor upon confirmation of the Plan. The following property shall not revest in the Debtor upon confirmation: *[Describe or state none]*
   **NONE**

☐ See Section (J), Varying Provisions.

(H) **Tax Returns**. While the case is pending, the Debtor shall provide to the Trustee a copy of any post-petition tax return within thirty days after filing the return with the tax agency. The Debtor has filed all tax returns for all taxable periods during the four-year period ending on the petition date, except: *[not applicable or describe unfiled returns]*.
   **NONE**

(I) **Funding Shortfall**. Debtor will cure any funding shortfall before the Plan is deemed completed.

5

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

Case 2:10-bk-12228-DPC    Doc 6    Filed 04/23/10    Entered 04/23/10 18:02:27    Desc
Main Document    Page 5 of 25

(J)  **Varying Provisions**. The Debtor submits the following provisions that vary from the Local Plan Form, Sections (A) through (H):

(C) Payments disbursed by the Trustee shall be paid in the following order: (a) first to administrative claims, including adequate protection; (b) then to secured claims, paid pro-rata; (c) then to priority unsecured claims, paid pro-rata; (d) then to general unsecured claims, paid pro-rata.

(C) If a secured creditor does not file a timely objection to confirmation of the Plan then it is deemed to have accepted treatment of its claim under the plan, irrespective of the filing of a secured proof of claim. 11 U.S.C. §1325(a)(5)(A). In the event that a secured creditor or a priority unsecured creditor fails to file a secured/priority unsecured claim before confirmation or files a wholly unsecured claim, the Debtor may delete the proposed payment of the secured/priority unsecured claim in the order confirming the Plan with no additional notice.

(C)(4) Maricopa County Treasurer: Notwithstanding the Plan provision that "[p]repetition arrearages shall be cured through the Trustee," no funds shall be paid to the Maricopa County Treasurer through Plan by the Trustee, and any and all pre-petition and post-petition accrued and accruing real property taxes, including any applicable interest, shall be paid direct by the Debtors to the creditor outside of this Plan.

(C)(4) JPMorgan Chase Bank N.A.: This creditor, or its successors in interest holds a voluntary lien, also called a Deed of Trust, against the Debtor's real property described below, and such lien is recorded in the Office of the Maricopa County Recorder, in the State of Arizona, at record number 2006-0914014. The value of the subject real property is $116,000, and was valued in accordance with that certain real estate appraisal prepared by Denise S. Henning of DSH Appraisal Services . A true and correct copy of the foregoing valuation is attached hereto as Exhibit A and is incorporated herein by reference. The value of the subject real property is insufficient to secure all prior perfected liens against the subject real property and, as a direct result, no equity exists in the subject real property to secure this creditor's lien. Therefore, the Debtor shall file an adversary proceeding avoiding the lien of this creditor. Further, as a result of the avoidance of the lien of this creditor, this creditor shall not be paid through the Plan as a secured creditor, or direct by the Debtor, rather any filed claim of this creditor for this debt shall be classified as a general unsecured claim and paid in accordance with Section (C)(8) of the Plan.

Assessor's Parcel Number: 302-38-267

Street Address: 964 East Gila Lane, Chandler, AZ 85225.

Legal Description: LOT 38, STONEGATE CROSSING UNIT THREE, A SUBDIVISION RECORDED IN BOOK 263 OF MAPS, PAGE 44, RECORDS OF MARICOPA COUNTY, ARIZONA.

(C)(5) Interest Rate: The interest rate to be paid on all secured claims listed below, unless otherwise stated, shall be the sum of the prime rate as stated below and the risk adjustment factor as stated below. The current prime rate of interest as of the date the initial Plan is filed in this case, as reported in the Wall Street Journal (in accordance with information reviewed at http://www.bankrate.com), is 3.25%. The risk adjustment factor under this Plan is 1.0%. The factors taken into account to determine the risk factor include the status of the debt at filing (see below), prior bankruptcy filings (see the Voluntary Petition filed in this case), Plan feasibility, the nature of the security and the

(1)   liquidity of same, and equal treatment of similarly situated creditors.

(2)   CHASE BANK: Debtor(s) intend to avoid lien under 522(f)(1) or 522(f)(2).

(K)  **Plan Summary**. If there is a discrepancy between paragraphs (A) - (J) and paragraphs (K) - (M), then the provisions of paragraphs (A) - (J) and the confirmed plan control.

| | | |
|---|---|---:|
| (1) | Trustee's compensation (10% of plan payments) | $ 2,638.20 |
| (2) | Ongoing post-petition mortgage payments | $ 0.00 |
| (3) | Administrative expenses and claims | $ 1,410.00 |
| (4) | Priority claims | $ 5,978.00 |
| (5) | Prepetition mortgage or lease arrears, or amount to cure defaults, including interest | $ 975.50 |
| (6) | Secured personal property claims, including interest | $ 303.86 |
| (7) | Amount to unsecured nonpriority claims | $ 17,194.44 |
| (8) | **Total of plan payments** | $ 28,500.00 |

(L)  **Section 1325 Analysis**.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

(1)  *Best Interest of Creditors Test:*

| | | | |
|---|---|---|---:|
| (a) | Value of Debtor's interest in nonexempt property | $ | 508.37 |
| (b) | Plus: Value of property recoverable under avoiding powers | $ | 0.00 |
| (c) | Less: Estimated Chapter 7 administrative expenses | $ | 127.09 |
| (d) | Less: Amount to unsecured, priority creditors | $ | 5,978.00 |
| (e) | **Equals:** Estimated amount payable to unsecured, nonpriority claims if Debtor filed Chapter 7 | $ | 0.00 |

Paragraph (2) to be completed by debtors whose current monthly income exceeds the state's median income.

(2)  *Section 1325(b) Analysis:*

| | | | |
|---|---|---|---:|
| (a) | Monthly disposable income under § 1325(b)(2), Form B22C, Statement of Current Monthly Income | $ | -31.31 |
| (b) | Applicable commitment period | $ | 60 |
| (c) | Section 1325(b)(2) monthly disposable income amount multiplied by 60 | $ | -1,878.60 |
| (M) | **Estimated Amount to Unsecured Nonpriority Creditors Under Plan** | $ | 17,194.44 |

Dated:  April 23, 2010

/s/ DBM-3833
**DAVID BARRY MANNING**
Debtor

/s/ RDB-005224
**ROBERT D. BEUCLER 005224**
Attorney for Debtor
**PHILLIPS & ASSOCIATES**
**20 EAST THOMAS ROAD, 26TH FLOOR**
**PHOENIX, AZ 85012**

/s/ KRP-7204
**KRISTYNNA RENEE PERU**
Debtor

*rev. 12/09*

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

Case 2:10-bk-12228-DPC    Doc 6    Filed 04/23/10    Entered 04/23/10 18:02:27    Desc
Main Document    Page 7 of 25

Exhibit A

# Residential Appraisal Report

## Of

### Single Family Residence at

964 E Gila Lane

Chandler, AZ 85225-8485

## For

Manning/Teague/Phillips & Associates

20 E Thomas Road #2600

Phoenix, AZ 85012

## As of

April 19, 2010

| Borrower | Manning | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 964 E Gila Lane | | | | | |
| City  Chandler | | County | Maricopa | State | AZ | Zip Code  85225-8485 |
| Lender/Client | Manning/Teague/Phillips & Associates  Address  20 E Thomas Road #2600, Phoenix, AZ 85012 | | | | | |

THE FOLLOWING REPORT IS PREPARED SUBJECT TO THESE CONDITIONS.  DO NOT RELY ON THIS REPORT UNLESS YOU ACCEPT THESE CONDITIONS.

### SCOPE OF THE APPRAISAL

The scope of the appraisal includes the process of collecting, confirming, analyzing and reporting various data used in developing my opinion of value. The opinions rendered in this report are solely those of the analyst acting as disinterested third party.  The Certification section of this report states the conditions  under which this report has been prepared.

The appraisal was prepared for Bankruptcy purposes only and does not constitute an expert inspection of the property.

The highest and best use based on area observation and is for continued residential use.

It is assumed that there are no structural defects hidden by floor or wall coverings or any other hidden or unapparent conditions of the property; that all mechanical equipment and appliances are in good working condition; and that all electrical components and the roof are in good condition.

The appraiser is not a home or environmental inspector.  The appraiser provides an opinion of  value.  The appraisal does not guarantee that the property is free of defects or environmental problems.  The appraiser performs an inspection of visible and accessible areas only.  Mold may or may not be present in areas the appraiser cannot see.  A professional home inspection or environmental inspection is recommended  if this is a concern.

If the client has any questions regarding these items, it is the client's responsibility to order the appropriate inspections.  The appraiser does not have the skill or expertise needed to make such inspections.  The appraiser assumes no responsibility for these items.

For the purposes of this report, "market value" means the most probable price estimated in terms of cash in United States dollars or comparable market financial arrangements that the property would bring if exposed for sale in the open market, with reasonable time allowed in which to find a purchaser, buying with knowledge of all of the uses and purposes to which it was adapted and for which it was capable. (ARS 28-7091)

The square footage per pubic record is presumed correct.  No Sketch has been provided.

The subject boundaries may differ from the search radius.

Photos of comparable sales have been taken from the MLS media.  These show the condition and appeal of the subject at the time of sale.

This appraisal report is intended for use in a Chapter 13 Bankruptcy filing only. This report is not intended for any other use. Nor may it be used by any other person(s) other than the clients names herein, namely Robert Teague, attorney representing the home owner, and the court having jurisdiction in this matter.  Neither all, nor any part of the contents of the report, or copy thereof, shall be used for any purposes by anyone but the client named herein.

# Residential Appraisal Report

The purpose of this summary appraisal report is to provide the client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address 964 E Gila Ln | | City Chandler | | State AZ | Zip Code 85225-8485 | | |
| Owner David Manning | | Intended User Robert Teague | | County Maricopa | | | |

Legal Description Lot 38/STONEGATE CROSSING UNIT 3 MCR 283-44

| Assessor's Parcel # 302-38-267 | | Tax Year 2009 | R.E. Taxes $ 1,115.32 |
|---|---|---|---|
| Neighborhood Name Stonegate Crossing Unit 3 Lt 1-217 Tr A | Map Reference 167 MD 178 | Census Tract 5229.01 | |
| Occupant [X] Owner [ ] Tenant [ ] Vacant Special Assessments $ N/A | [X] PUD | HOA $ 42 | [ ] per year [X] per month |
| Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) | | | |

Intended Use Chapter 13 Bankruptcy and the court having jurisdiction in this matter and no other use or user

Client Manning/Teague/Phillips & Associates    Address 20 E Thomas Road #2600, Phoenix, AZ 85012

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s).    The subject property has not been listed for sale within the past one year.

## CONTRACT

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.    The subject is not currently offered for sale.

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? [X] Yes [ ] No  Data Source(s) NetValueCentral

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the purchaser? [ ] Yes [ ] No

If Yes, report the total dollar amount and describe the items to be paid. N/A

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit 90 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | 84 Low | 1 | 2-4 Unit % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [X] Under 3 mths [ ] 3-6 mths [ ] Over 6 mths | | | 460 High | 27 | Multi-Family % |
| | | | | | | 173 Pred. | 18 | Commercial 5 % |

Neighborhood Boundaries  The subject is bounded by Warner Road to the North, McQueen Road to the West, Ray Road to the South and Cooper Road to the East.

Other 5 %

Neighborhood Description  The subject is primarily residential. Main arterial's provide access to major retail and business centers.

Marketability is considered good so the large site and recent improvements.

Market Conditions (including support for the above conclusions)  Marketing time, as evidenced by sales sited as well as other market data, ranges from 0-30 days. Listing to sales price  per sales cited typically at the listing price.    Interest rates are favorable to borrow's , however, lack of financing options as compared to previous years has continued to impact the marketplace.

## SITE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dimensions 50 X 150 X 10.5 X Radius X 101 | Area 7,018+/- SqFt | Shape Irregular | View Res/CDS/Busy St | | | | |
| Specific Zoning Classification PAD | Zoning Description Planned Area Development (cm & Rd Uses) (100.00%) | | | | | | |
| Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) | | | | | | | |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements–Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | |
| Gas | | | Sanitary Sewer | [X] | | Alley None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone X500    FEMA Map # 040040 2655G    FEMA Map Date 09/30/2005

Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe.

The site is typical of competing single-family properties in the area. No apparent adverse easements or encroachments were noted at time of inspection. Unless otherwise stated within the report, no effort was made to ascertain whether the subject is within the appropriate setbacks, as dictated by zoning, building or other regulations.

## IMPROVEMENTS

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [X] Concrete Slab [ ] Crawl Space | | Foundation Walls Concrete/Avg | | Floors Crpt/tile/faux wd/Avg | |
| # of Stories Two | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls Frame/Stucco/Avg | | Walls Drywall/ Avg | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area sq. ft. | | Roof Surface Tile/Avg | | Trim/Finish Paint Grade/Avg | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish None % | | Gutters & Downspouts None | | Bath Floor Faux wd /Avg | |
| Design (Style) 2-Story | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type AL Slide/Avg | | Bath Wainscot Fiber glass/Avg | |
| Year Built 1985 | | Evidence of [ ] Infestation [ ] Dampness [ ] Settlement | | Storm Sash/Insulated No/Yes | | Car Storage [ ] None | |
| Effective Age (Yrs) 25+/- Years | | | | Screens Screens/Avg | | [X] Driveway # of Cars 2 | |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | | | Amenities [ ] Woodstove(s) # | | Driveway Surface Concrete | |
| [ ] Drop Stair [ ] Stairs | [ ] Other Fuel Electric | | | [ ] Fireplace(s) # [X] Fence Block | | [X] Garage # of Cars 2 | |
| [ ] Floor [ ] Scuttle | Cooling [X] Central Air Conditioning | | | [ ] Patio/Deck [ ] Porch cvrd | | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other Refrig | | | [ ] Pool | | [ ] Att. [ ] Det. [X] Built-in | |
| Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | | | | | |

Finished area above grade contains:  5 Rooms  2.5 Bath(s)  1336 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)  tile on the lower level, faux wood laminate on upper level

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  No external obsolescence noted. The floor plan is functional. No apparent physical or functional inadequacies were noted at the time of the inspection. The floorplan is functional. The subject has been maintained in an average manner, with no known needed repairs.    Gross living area has been taken from the public records and is presumed correct. No sketch has been provided. There is no carpet or other surface material on the stairs. The subject is located adjacent to a traffic bearing arterial, subject to noise pollution.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe None noted at the time of inspection. This report does not cover environmental conditions such as mold or radon. The appraiser is not qualified to assess structural integrity. If that is a concern for the client or buyer, the services of a structural engineer should be retained.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe  Yes, the property conforms. The subject is maintained in a manner similar to other properties in the neighborhood. Subject architectural style is in conformity with the area norms. Surrounding homes are maintained in a manner similar to  the subject.

AR - Residential 5/2007    This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.
Produced by ClickFORMS Software www.ClickFORMS.net    Form    Desc

Case 2:10-bk-12228-DPC    Doc 22    Filed 04/23/10    Page 11 of 25
Main Document

# Residential Appraisal Report

| | There are | 25+/- | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 79,000 | to $ | 260,000 |
|---|---|---|---|---|---|---|
| | There are | 41+/- | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 65,000 | to $ | 180,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 964 E Gila Lane | 848 E Calle Del Norte -- | 928 E Manor Drive 0 | 1460 E Countrywalk Lane |
| | Chandler, AZ 85225-8485 | Chandler | Chandler | Chandler |
| Proximity to Subject | | 0.16 miles SW | 0.15 miles SW | 0.77 miles SE |
| Sale Price | $ N/A | $ 110,000 | $ 120,000 | $ 139,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 80.17 sq. ft. | $ 89.82 sq. ft. | $ 90.55 sq. ft. |
| Data Source(s) | | MLS#4330915/Doc#100264325 | MLS#4304018/Doc#100136683 | MLS#4226065/Doc#100091988 |
| Verification Source(s) | | $103,000/30 DOM | $120,000/31 DOM | $129,700/100 DOM |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | N/A | FHA | | Conventional | | FHA | |
| Concessions | N/A | Typical Financing | | Typical Financing | | Typical Financing | |
| Date of Sale/Time | | 03/30/2010 | | 02/18/2010 | | 02/03/2010 | |
| Location | Sub/Stonegate Crossing | Sub/Stonegate Crossing | | Sub/Stonegate Crossing | | Sub/Countrywalk | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 7,018+/- SqFt | 6,168 +/-SqFt | 0 | 5,824 +/-SqFt | +1,200 | 6,856 +/-SqFt | 0 |
| View | Res/CDS/Busy St | Res/CDS | -2,500 | Residential | -2,500 | Residential | -2,500 |
| Design (Style) | 2-Story | 2-Story | | 2-Story | | 2-Story | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 25 yrs | 25 yrs | | 24 yrs | | 22 yrs | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 5 | 3 | 2.5 | 5 | 3 | 2.5 | 5 | 3 | 2.5 | 5 | 3 | 2.5 |
| Gross Living Area | 1336 sq. ft. | 1,372 sq. ft. | 0 | 1,336 sq. ft. | 0 | 1,535 sq. ft. | -6,965 |
| Basement & Finished | None | REO SALE | | REO SALE | | SHORT SALE | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/Refrig | FWA/Refrig | | FWA/Refrig | | FWA/Refrig | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | No Covered Patio | Covered Patio | -1,500 | No Covered Patio | | Covered Patio | -1,500 |
| | No Fireplace | No Fireplace | | No Fireplace | | 1 Fireplace | -500 |
| | No Pool | No Pool | | No Pool | | Pool | -8,000 |
| | Average Upgrds | Avg Upgrades | | Avg Upgrades | | Avg Upgrades | |
| Net Adjustment (Total) | | + X - | $ -4,000 | + X - | $ -1,300 | + X - | $ -19,465 |
| Adjusted Sale Price | | Net Adj: -4% | | Net Adj: -1% | | Net Adj: -14% | |
| of Comparables | | Gross Adj: 4% | $ 106,000 | Gross Adj: 3% | $ 118,700 | Gross Adj: 14% | $ 119,535 |

| X | did | | did not research the sale or transfer history of the subject property and comparable sales. If not, explain |
|---|---|---|---|

| My research | | did | X | did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal. |
|---|---|---|---|---|

Data source(s)  MLS, public records

| My research | X | did | | did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale. |
|---|---|---|---|---|

Data source(s)  MLS, public records

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/20/2003 | TD 01/15/2010 $98,700 | TD 12/10/2009 | 02/12/2002 |
| Price of Prior Sale/Transfer | $134,250 | 3/17/2005 $175,000 | $130,590 | $148,620 |
| Data Source(s) | NetValueCentral | NetValueCentral | NetValueCentral | NetValueCentral |
| Effective Date of Data Source(s) | 04/21/2010 | 04/21/2010 | 04/21/2010 | 04/21/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Sales history, when available has been cited above.

Summary of Sales Comparison Approach    Consideration has been given to all cited sales. The subject is located adjacent to a traffic bearing arterial, which impacts value as well as marketability.  A downward adjustment has been applied to all cited sales. Site adjusted to the nearest $100.  All other adjustments are considered self-explanatory.  All adjustments to comparable's reflect differences between them and the subject property based on local market willingness to pay for these items as opposed to original cost or replacement cost.  All other adjustments to the comparable's reflect differences between them and the subject property based on local market willingness to pay for these items as opposed to original cost or replacement cost.

Currently, there are 8 pending foreclosures and 7 foreclosed properties in the immediate area of the subject.

Indicated Value by Sales Comparison Approach $    116,000

| Indicated Value by: Sales Comparison Approach $ 116,000 | Cost Approach (if developed) $ 0 | Income Approach (if developed) $ N/A |
|---|---|---|

The final value estimates rests with the Sales Comparison Approach. Cost approach was not utilized. The Income Approach was not used in this owner-occupied area.  An analysis of other sales and current listings appear to support the value indicated by the Sales Comparison Approach.  This data has been retained in our files.

This appraisal is made X "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is

$ 116,000 , as of April 19, 2010 , which is the date of inspection and the effective date of this appraisal.

# Residential Appraisal Report

**ADDITIONAL COMMENTS**

OMD = off market date

REO = real estate owned by lender

DOM = days on market

SHORT SALE = property being sold for less than mortgage(s)

Data Source grid will show the MLS number and the recorded docket number.  If the property has not yet sold, the status of the property will be shown, i.e. pending or active

Under the Data Source is Verification.  This will show the  list price and the days on market.

All closed sales are verified closed in MLS, the public record, and/or the listing or selling agent.

The most recent sales of similar properties have been utilized.

**COST APPROACH**

## COST APPROACH TO VALUE (If applicable)

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Cost Approach was not required for this assignment.

| ESTIMATED | REPRODUCTION OR | REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | |
|---|---|---|---|---|---|---|
| Source of cost data | | | Dwelling | Sq. Ft. @ $ | =$ | 0 |
| Quality rating from cost service | Effective date of cost data | | | Sq. Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | Covered Patio. | | | |
| | | | Garage/Carport | Sq. Ft. @ $ | =$ | 0 |
| | | | Total Estimate of Cost-new | | =$ | 0 |
| | | | Less    Physical  19 Functional  0 External | | | |
| | | | Depreciation  0  0  0 | | =$ ( | 0 ) |
| | | | Depreciated Cost of Improvements | | =$ | 0 |
| | | | "As-Is" Value of Site Improvements | | =$ | |
| Estimated Remaining Economic Life (HUD and VA only) | | Years | Indicated Value By Cost Approach | | =$ | 0 |

**INCOME**

## INCOME APPROACH TO VALUE (If applicable)

Estimated Monthly Market Rent $    N/A    X Gross Multiplier    N/A    =$    N/A    Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

**PUD INFORMATION**

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowner's Association (HOA)?  [ ] Yes [X] No  Unit type(s)  [X] Detached  [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases          Total number of units          Total number of units sold

Total number of units rented          Total number of units for sale          Data source(s)

Was the project created by the conversion of existing building(s) into a PUD?  [ ] Yes    [ ] No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  [ ] Yes  [ ] No  Data source.

Are the units, common elements, and recreation facilities complete?  [ ] Yes    [ ] No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowner's Association?  [ ] Yes    [ ] No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Borrower  Manning
Property Address  964 E Gila Lane

| City | Chandler | County | Maricopa | State | AZ | Zip Code | 85225-8485 |
|------|----------|--------|----------|-------|-----|----------|------------|

Lender/Client    Manning/Teague/Phillips & Associates    Address    20 E Thomas Road #2600, Phoenix, AZ 85012

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---------|---------|---------------------|--|---------------------|--|---------------------|--|
| Address | 964 E Gila Lane Chandler, AZ 85225-8485 | 827 E Calle Del Norte — Chandler | | 803 E Calle Del Norte Street Chandler | | 842 E Gila Lane Chandler | |
| Proximity to Subject | | 0.21 miles SW | | 0.27 miles W | | 0.17 miles W | |
| Sale Price | $ N/A | $ 114,000 | | $ 137,500 | | $ 119,900 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 83.09 sq. ft. | | $ 100.22 sq. ft. | | $ 87.39 sq. ft. | |
| Data Source(s) | Inspected | MLS#4296891/1002312276 | | MLS#4349064/Pending | | MLS#4347321/Listing | |
| Verification Source(s) | Public Record | $126,250/53 DOM | | $137,500/14 DOM | | $119,900/48 DOM | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Cash | | N/A | | N/A | |
| Concessions | N/A | Typical Financing | | N/A | | N/A | |
| Date of Sale/Time | | 03/12/2010 | | Pending Sale | | Current Listing | |
| Location | Sub/Stonegate Crossing | Sub/Stonegate Crossing | | Sub/Stonegate Crossing | | Sub/Stonegate Crossing | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 7,018+/- SqFt | 5,567 +/-SqFt | +1,500 | 12,207+/- SqFt | -5,100 | 5,719 +/-SqFt | +1,300 |
| View | Res/CDS/Busy St | Residential | -2,500 | Res/CDS | -2,500 | Residential | -2,500 |
| Design (Style) | 2-Story | 2-Story | | 2-Story | | Ranch | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 25 yrs | 25 yrs | | 25 yrs | | 25 yrs | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5  3  2.5 | 6  3  2.5 | | 6  3  2.5 | | 6  3  3 | -1,500 |
| Gross Living Area | 1336 sq. ft. | 1,372 sq. ft. | 0 | 1,372 sq. ft. | 0 | 1,372 sq. ft. | 0 |
| Basement & Finished | None | REO (HUD SALE) | | REO SALE | | REO SALE | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/Refrig | FWA/Refrig | | FWA/Refrig | | FWA/Refrig | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | No Covered Patio | Covered Patio | -1,500 | Covered Patio | -1,500 | Covered Patio | -1,500 |
| | No Fireplace | No Fireplace | | 1 Fireplace | -500 | 1 Fireplace | -500 |
| | No Pool | No Pool | | Pool | -8,000 | No Pool | |
| | Average Upgrds | Avg Upgrades | | Avg Upgrades | | Avg Upgrades | |
| Net Adjustment (Total) | | ☐+ ☒X ☐- | $ -2,500 | ☐+ ☒X ☐- | $ -17,600 | ☐+ ☒X ☐- | $ -4,700 |
| Adjusted Sale Price of Comparables | | Net Adj: -2% Gross Adj: 5% | $ 111,500 | Net Adj: -13% Gross Adj: 13% | $ 119,900 | Net Adj: -4% Gross Adj: 6% | $ 115,200 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|------|---------|---------------------|---------------------|---------------------|
| Date of Prior Sale/Transfer | 03/20/2003 | TD 03/09/2009 $268,318 | TD 01/29/2010 $168,686 | 06/21/2007 |
| Price of Prior Sale/Transfer | $134,250 | 7/13/2006 $239,000 | 05/01/2007 $259,000 | $205,000 |
| Data Source(s) | NetValueCentral | 1/18/2005 $163,000 | NetValueCentral | NetValueCentral |
| Effective Date of Data Source(s) | 04/21/2010 | 04/21/2010 | 04/21/2010 | 04/21/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach

File No. 04-3090
Case No.

# Market Conditions Addendum to the Appraisal Report

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 964 E Gila Lane | City | Chandler | State | AZ | Zip Code | 85225-8485 |
| Borrower | Manning | | | | | | |

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. If data sources provide the information as an average instead of the median, then the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 21 | 10 | 10 | Increasing | X | Stable | | Declining | |
| Absorption Rate (Total Sales/Months) | 3.5 | 3.33 | 3.33 | Increasing | X | Stable | | Declining | |
| Total # of Comparable Active Listings | 32 | 16 | 25 | Declining | | Stable | X | Increasing | |
| Months of Housing Supply (Total Listings/Ab. Rate) | 9.14 | 4.8 | 7.51 | Declining | | Stable | X | Increasing | |
| Median Sale & List Price, DOM, Lst/Sale Ratio | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | | | |
| Median Comparable Sales Price | 117,500 | 112,000 | 120,000 | Increasing | X | Stable | | Declining | |
| Median Comparable Sales Days on Market | 37 | 50 | 78 | Declining | | Stable | X | Increasing | |
| Median Comparable List Price | 119,950 | 119,950 | 119,900 | Increasing | X | Stable | | Declining | |
| Median Comparable Listing Days on Market | 76 | 90 | 59 | Declining | X | Stable | | Increasing | |
| Median List-to-Sale Price Ratio | .99 | .99 | 100 | Declining | | Stable | X | Increasing | |
| Seller (developer, builder, etc.) paid financial assistance prevalent? | | Yes | X | No | | Declining | X | Stable | | Increasing |

Explain in detail seller concessions trends for the past 12 months (e.g. seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs condo fees, options, etc.)
Seller concessions are not typically available through the local MLS, however, based on the data from appraisals conducted for purchases, seller contributions remain at approximately 3 to 4 percent of the sales price.

Are foreclosure sales (REO sales) a factor in the market?  X Yes   No  If yes, explain (including the trends in listings and sales of foreclosed properties).
It appears that the lenders are reducing list prices to move inventory faster. That further damages existing values to the marketplace. It should be noted that this is a lender driven market as opposed to a consumer driven market.

Cite data sources for above information.
MLS.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales, and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
This lender required form clearly summarizes the market conditions of homes that are similar to the subject in the past one year. The neighborhood section comprises the last 3 months of all single family homes in the same defined area. The neighborhood section, is more broadly defined, using all sales, of all ages and GLA, than is this form that asks for "comparable" properties. Therefore, the conclusion cited within this form will not be similar to the conclusions in the neighborhood section.
This is a lender driven market not a consumer driven market, consequently, there is a lack of consistency with listing as well as sales prices. Additionally the use of BPO's which are not unbiased, as the realtor has a financial stake in the listing, continues to impact the marketplace.

If the subject is a unit in a condominium or cooperative project, complete the following:    Project Name:

| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | |
|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | Increasing | Stable | Declining | |
| Absorption Rate (Total Sales/Months) | | | | Increasing | Stable | Declining | |
| Total # of Active Comparable Listings | | | | Declining | Stable | Increasing | |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | Declining | Stable | Increasing | |

Are foreclosures sales (REO sales) a factor in the project?   Yes   No  If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| | | | |
|---|---|---|---|
| Signature | *[signature]* | Signature | |
| Appraiser Name | Denise S Henning | Supervisor Name | |
| Company Name | DSH Appraisal Services | Company Name | |
| Company Address | 408 E Malibu Drive | Company Address | |
| State License/Certification # | 20595 | State | AZ | State License/Certification # | | State | |
| Email Address | denise@dshappraisals.net | Email Address | |

Case 2:10-bk-12228-DPC   Doc 6   Filed 04/23/10   Entered 04/23/10 18:02:27   Desc
Main Document   Page 15 of 25

| Borrower | Manning | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 964 E Gila Lane | | | | | | |
| City  Chandler | | County | Maricopa | State | AZ | Zip Code | 85225-8485 |
| Lender/Client | Manning/Teague/Phillips & Associates | | Address | 20 E Thomas Road #2800, Phoenix, AZ 85012 | | | |



**FRONT OF
SUBJECT PROPERTY**
964 E Gila Lane
Chandler, AZ 85225-8485



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

File No.   04-3090
Case No.

Borrower   Manning
Property Address    964 E Gila Lane
City   Chandler          County        Maricopa        State        AZ        Zip Code      85225-8485
Lender/Client    Manning/Teague/Phillips & Associates        Address   20 E Thomas Road #2600, Phoenix, AZ 85012



kitchen



living room



bath



master bath





| Borrower | Manning | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 964 E Gila Lane | | | | | |
| City Chandler | | County | Maricopa | State AZ | | Zip Code 85225-8485 |
| Lender/Client | Manning/Teague/Phillips & Associates | | Address | 20 E Thomas Road #2600, Phoenix, AZ 85012 | | |



**COMPARABLE SALE #    1**
848 E Calle Del Norte --
Chandler



**COMPARABLE SALE #    2**
928 E Manor Drive 0
Chandler



**COMPARABLE SALE #    3**
1460 E Countrywalk Lane
Chandler

Borrower    Manning
Property Address    964 E Gila Lane
City   Chandler          County          Maricopa          State          AZ          Zip Code   85225-8485
Lender/Client    Manning/Teague/Phillips & Associates          Address   20 E Thomas Road #2600, Phoenix, AZ 85012



**COMPARABLE SALE #    4**
827 E Calle Del Norte --
Chandler



**COMPARABLE SALE #    5**
803 E Calle Del Norte Street
Chandler



**COMPARABLE SALE #    6**
842 E Gila Lane
Chandler

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Manning | | | | | |
| Property Address | 964 E Gila Lane | | | | | |
| City  Chandler | | County | Maricopa | State | AZ | Zip Code 85225-8485 |
| Lender/Client | Manning/Teague/Phillips & Associates | | Address  20 E Thomas Road #2600, Phoenix, AZ 85012 | | | |



| Borrower | Manning | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 964 E Gila Lane | | | | | | |
| City  Chandler | | County | Maricopa | State | AZ | Zip Code | 85225-8485 |
| Lender/Client | Manning/Teague/Phillips & Associates | | Address | 20 E Thomas Road #2600, Phoenix, AZ 85012 | | | |



This appraisal report is subject to the scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. The Appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.

## SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

## DEFINITION OF MARKET VALUE: As per Fannie Mae the definition of market value is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event.

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

Case 2:10-bk-12228-DPC    Filed 04/23/10    Entered 04/23/10 16:11:26    Desc
Main Document    Page 23 of 25

21. I am aware that any disclosure or distribution of this appraisal report by me or the client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

22. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Denise S Henning_ | Signature _____ |
| Name  Denise S Henning | Name _____ |
| Company Name DSH Appraisal Services | Company Name _____ |
| Company Address  408 E Malibu Drive | Company Address _____ |
| Tempe, AZ 85282 | |
| Telephone Number 480-921-7094 | Telephone Number _____ |
| Email Address denise@dshappraisals.net | Email Address _____ |
| Date of Signature and Report  April 21, 2010 | Date of Signature _____ |
| Effective Date of Appraisal April 19, 2010 | State Certification # _____ |
| State Certification #  20595 | or State License # _____ |
| or State License # | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State      AZ | |
| Expiration Date of Certification or License 12/31/2011 | |

ADDRESS OF PROPERTY APPRAISED
 964 E Gila Lane
Chandler, AZ 85225-8485

APPRAISED VALUE OF SUBJECT PROPERTY $ ____116,000____
CLIENT
Name   Robert Teague/Phillips & Associates
Company Name Manning/Teague/Phillips & Associates
Company Address  20 E Thomas Road #2600
Phoenix, AZ 85012
Email Address robertt@phillipslaw.ws

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection
☐ Did inspect interior and exterior of subject property
Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

NL - General Certification 5/2007    This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

Case 2:10-bk-12228-DPC    Doc 6    Filed 04/23/10   Entered 04/23/10 18:02:27    Desc
Main Document    Page 24 of 25

Produced by ClickFORMS Software www.ClickFORMS.net    Page   15  of  16



STATE OF ARIZONA

# BOARD OF APPRAISAL

BE IT KNOWN THAT

## DENISE S. HENNING

HAS MET ALL THE REQUIREMENTS AS A

### Certified Residential Real Estate Appraiser

In accordance with Arizona Revised Statutes
and on authority of the Board of Appraisal, State
of Arizona.

This certificate shall remain evidence thereof
unless or until the same is suspended, revoked
or expires in accordance with the provisions of
law.

CERTIFICATE NUMBER
20595
EXPIRATION DATE
December 31, 2011

In witness whereof the Arizona Board of Appraisal
caused to be signed by the Chair of the Board
and the Executive Director